IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) Civil Action No. 3:07-1769-JFA-JRM<br>)<br>) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| SIEMENS MAINTENANCE SERVICES, LLC, | )<br>) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, the Equal Employment Opportunity Commission ("EEOC") filed this action on June 27, 2007. EEOC alleges that Siemens Maintenance Services, LLC ("Siemens") violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.[1] by failing to hire Kenneth Dewalt ("Dewalt") based on his age. On March 24, 2008, Siemens filed a motion for summary judgment. Plaintiff filed a response on April 11, 2008, and Siemens filed a reply on April 21, 2008.

## SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir.

1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989), n.7.

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin</u>

<u>v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies</u>

<u>Applications & Servs. Co.</u>, 80 F.3d 954 (4th Cir. 1996).

### **FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF**

1.    Siemens was established in 2002 to provide services to ensure the operating efficiency of
      security systems in commercial airports nationwide.  In approximately 2003, Siemens began
      performing work for the Transportation Security Administration ("TSA") to maintain and
      repair equipment at airports across the country.

2.    On approximately December 10, 2005, Dewalt applied with Siemens for a field services
      technician ("FST") position located in Columbia, South Carolina.  Dewalt was 57 years old
      at the time.

3.    A FST is responsible for the maintenance and repair of explosive trace detectors ("ETDs"),
      metal detectors, and x-ray machines at airports.  A FST also maintains records concerning
      inspections, failures, repairs, and maintenance.  In responding to service calls, a FST must
      be able to communicate with TSA employees about the nature of the equipment problem and
      provide updates on getting the problem resolved.  Plaintiff's Ex. 1 (Job Advertisement);
      Juanita Strother Dep. 31-32; Andrew Munson Dep. 88.

4.    The FST position requires a minimum of two years of electronics experience as well as
      customer service skills, communications skills, and administrative work.  <u>See</u> FST Job
      Requisition (Ex. 1 to Defendant's Motion for Summary Judgment).

5.    Siemens recruited for FSTs in Columbia by posting the position on various internet job boards and asking for referrals from current employees.  Siemens had an outside company, Attwater Corporation ("Attwater"), screen the resumes of the internet applications.[2]  The resumes of those applicants referred by current employees and those which were recommended by Attwater after screening were referred to a Siemens' employee for an interview.

6.    Dewalt was interviewed over the telephone by Joe Cristophe, an Attwater Representative. Dewalt states that Cristophe, at the time, told him he was the most qualified applicant so far. Dewalt Dep. 140-141.

7.    On January 24, 2006, Juanita Strother ("Strother"), Area Supervisor for Siemens, interviewed three candidates.  These candidates were Dewalt, Danny King ("King"), and Andrew Munson ("Munson").

8.    Munson was thirty years old and had been referred by Milton Pond ("Pond"), a current Siemens' FST.  Munson was not screened by Attwater because his resume was forwarded to Siemens by Pond.  See Pond Dep. 21; Strother Dep. 50; Munson Dep. 60.

9.    King was approximately 44 years old at the time (his resume indicates he graduated from high school in 1980).

10.   Munson was chosen by Strother for the FST position.  Strother Dep. 106.

11.   On February 17, 2006, Dewalt filed a charge of age discrimination against Siemens.

---

[2]Dewalt's application was screened by Attwater Corporation.

4

## DISCUSSION

Dewalt alleges that Siemens failed to hire him for a FST position based on his age. Siemens contends that its motion for summary judgment should be granted because it has articulated legitimate, nondiscriminatory reasons for its decision and Plaintiff fails to show that these reasons are pretext for age discrimination.

Under the alternative burden-shifting method of proof of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[3] a plaintiff may establish a prima facie case of age discrimination under the ADEA by proving that: (1) he was a member of the protected class (at least forty years old); (2) he applied for and was qualified for the position; (3) he was not selected for the position; and (4) the position remained open or was filled by a substantially younger individual. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996); Kinnally v. Marriott Int'l, Inc., 2006 WL 22182 (D.S.C. January 4, 2006). If plaintiff establishes a prima facie case of employment discrimination, then defendant has the burden of articulating a legitimate, non-discriminatory reason for its decision. O'Connor, 84 F.3d at 719. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

A.    Prima Facie Case

For purposes of summary judgment only, Siemens does not dispute that Plaintiff has established a prima facie case of age discrimination. See Defendant's Motion for Summary Judgment at 14.

---

[3]The EEOC has not alleged that it has any direct evidence of discrimination.

B.    Legitimate, Non-Discriminatory Reason

Siemens has articulated legitimate, nondiscriminatory reasons for selecting Munson instead of Dewalt for the FST position. Specifically, Siemens provides that Munson was selected because: (1) Munson was referred by a current FST who Munson worked for previously, Munson brought a second recommendation from his current employer[4] to the interview, and he brought a military commendation to the interview; (2) Munson's personality was superior for the customer services responsibilities of the position; (3) Munson had better communication skills including better people skills and better listening skills; and (4) Munson had better leadership skills as referenced by his resume and his Army commendation.

C.    Pretext

Plaintiff claims that pretext has been shown because: (1) Dewalt's qualifications are superior to Munson's qualifications; (2) Siemens did not give Dewalt fair consideration as Dewalt was treated differently during the interview process; and (3) Siemens' relied impermissibly on subjective criteria. Siemens contends that Plaintiff fails to show pretext because Plaintiff has not established that Dewalt's qualifications were demonstrably superior to those of Munson, Plaintiff has not established that age was the true reason for Munson's selection, and Plaintiff has not shown that the reasons given for Munson's selection were a post hoc justification to cover up for intentional discrimination.

---

[4]The letter was from George Munday ("Munday"), an employee of Bose (Munson's employer at the time).

6

(1)    Qualifications of Candidates

Plaintiff claims that Siemens' reasons for selecting Munson are pretext for discrimination because Dewalt's qualifications are superior to those of Munson. Additionally, Plaintiff contends that Siemens impermissibly deviated from the hiring criteria by selecting Munson based on his "great personality," which is not listed as a requirement in the FST job description. Siemens contends that Plaintiff fails to establish that Dewalt's qualifications were demonstrably superior to those of Munson's and that Munson's qualifications (in terms of what were required for the FST position) were superior to those of Dewalt. Specifically, Siemens contends that Plaintiff has not shown that Dewalt was better qualified for the FST position in terms of customer service skills, administrative skills, and team/leadership skills;

"Qualifications evidence" may suffice, at least in some circumstances, to show pretext. See Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006). The Fourth Circuit has stated that, when comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are demonstrably superior, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." Heiko v. Columbo Savings Bank, F.S.B., 434 F.3d 249, 261- 62 (4th Cir. 2006). But where "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Heiko, 434 F.3d at 261 (citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 649 & n. 4 (4th Cir. 2002) (emphasis added).

Thus, the evidence of the relative qualifications of the job candidates must be analyzed to determine whether a genuine issue of fact exists, such that a jury could conclude that Dewalt had

7

demonstrably superior qualifications than Munson.  The qualifications of the candidates and the job requirements are discussed below.

Dewalt worked in electronics while serving in the Navy, where he was responsible for preventative maintenance, repair, and troubleshooting of airborne air search radar.  He completed a twelve month training program in aviation electronics.  From 1978 to 2003, Dewalt worked for Piedmont Airlines, which later became U.S. Airways.  For five of those years, he worked as an Avionics Bench Technician and was responsible for troubleshooting and repairing airplane equipment including the airborne radar, air data computer, and the altitude alerter system.  For the next fourteen years, he worked as a Line Avionics Technician, responsible for troubleshooting and repairing problems with the electronic equipment on airplanes.  He then worked for two years as a technician in the Calibration Lab, repairing and calibrating the electronic testing equipment used by the Line Avionics Technicians.  From 1999 to 2003, Dewalt worked as a Ground Communications and Security Technician.  He was responsible for troubleshooting and repairing security equipment (including X-ray machine, and ETD equipment) at U.S. Airways' security checkpoints and servicing security equipment at several airports where U.S. Airways operated.  Dewalt's position was abolished when the federal government took over the operation of all security checkpoints at airports in 2003. He transferred back to an avionics position and then retired from U.S. Airways two years later.  Next, Dewalt worked for approximately two years at Efmark troubleshooting and maintaining ATM machines.  Dewalt Dep. 45-48, 58-59, 63-64, 68- 70, 74, 76-77, 85-86, 112-113, Plaintiff's Ex. 2 (Interview Notes and Resume).

Munson had four years experience in the U.S. Army as an Automatic Test Equipment ("ATE") Operator and Maintainer.  In that position, Munson repaired electronics components from

8

Apache helicopters and maintained the test equipment used to make the repairs. Approximately four to six months before he left he military, Munson became supervisor of the ATE group. In 2001, Munson began working for Bose Corporation. He worked for six months as a manufacturing technician, testing and troubleshooting home audio equipment before it left the facility; worked for a month or two in the quality department, troubleshooting and repairing audio equipment that had been returned by customers; returned to his manufacturing technician position for six months; worked for approximately one year as a failure analysis technician, testing and troubleshooting automotive sound systems; and worked as a test preventative maintenance technician, repairing and maintaining the testing equipment used by the technicians on the product lines. Munson Dep. 26-27, 37-39, 47, 50-53, 55-56 and Plaintiff's Ex. 3 (Interview Notes and Resume).

The FST job description provides that an FST is:

Responsible for corrective and preventative maintenance of explosive detection equipment and passenger screening equipment at the local and surrounding airports. Maintain field service logs and filing systems to properly initiate, organize and maintain all job files. Work assignments and report files will be channeled through a CMMS system.

Primary responsibilities:
Conduct and schedule investigative tests, repairs, and overhauls of detection equipment. Document all inspections, failures, repairs and maintenance. Review all logs for open issues and prepare formal reports to customers as necessary. Provide customers with equipment and service tools necessary for the operation and maintenance of products or equipment. Respond promptly to all service calls and requests for a particular unit. Assess products/equipment performance based on field support data; recommend modifications or improvements. Interface with customer personnel to provide quality service and feedback on problem evaluation and resolution. Train customers to maintain and adjust basic equipment. Maintain tools, test equipment, etc. Travel, overtime and work hours other than Monday-Friday may be required.

Education/Training: Associates Degree or equivalent technical training. Prefer Electrical/Electronic Engineering related Degree. Computer literacy required.

Work Experience: Minimum of 2 years experience directly involved in troubleshooting and repair of electrical and electronics systems and equipment. Medical CT, MRI and X-Ray experience is a definite plus.

Special Skills:
This position will require the successful completion and certification on the prescribed training course that is provided by Siemens. Individuals should possess excellent communications skills and have strong customer focus and teamwork.

Plaintiff's Ex. 1 (Job Description).

Review of the candidates' qualifications does not reveal that Dewalt was so clearly more qualified than Munson for the position that a reasonable juror could infer discriminatory intent from the comparison. Plaintiff contends that Dewalt's qualifications are superior to Munson's because he had twenty-seven years of experience, mainly in the airline industry; he worked as a Ground Communications and Security Technician which is comparable to Siemens' FST position such that he possessed the preferred qualifications sought for the FST position. Although Dewalt had more years of experience working with electronics and had some experience working with the types of equipment that were to be used on the FST job, the FST job description only required that candidates have a minimum of two year of experience directly involved in troubleshooting and repair of electrical and electronics systems and equipment, which Munson and Dewalt both possessed.

Plaintiff argues that Dewalt's qualifications were superior because he had experience working on x-ray and ETD equipment and his electronics equipment experience was superior to that of Dewalt as Dewalt had worked on audio equipment. The job description, while noting that experience working with CT, MRI and X-Ray equipment was a plus, did not require experience working on the type of equipment (x-ray, metal detector, and ETDs) used in the FST position. Siemens provided the necessary training for working with this equipment. See Defendant's Ex. 1 (Job Description): Strother Dep. 38-39. Plaintiff's argument that Dewalt was the best candidate, based solely on

10

Dewalt's own self-assessment, fails as it is the employer's perception and not the employee's perception, that is controlling.  See Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980).  Further, courts do not sit as super personnel departments second guessing an employer's perceptions of an employee's qualifications.  Smith v. University of North Carolina, 632 F.2d 316, 345-46 (4th Cir.1980); see also Evans v. Technologies Applications & Servs. Co., 875 F.Supp. 1115, 1120 (D.Md.1995), aff'd, 80 F.3d 954 (1996).

Siemens provides that Munson was chosen for the FST position based on his customer service skills, leadership and team abilities, and organizational skills.[5]  Plaintiff fails to show that Dewalt was so clearly more qualified for the position than Munson that a reasonable juror could infer discriminatory intent from the comparison.

Dewalt submitted a generic resume to Siemens that did not directly indicate that he had any experience in customer service.  He testified that he had customer service duties as a Ground Communication Technician for U.S. Airways which were not a large component of the job and consisted of telling people why he was in a secured area and approximately how long he would be there.  Dewalt Dep. 26-27.  In his job repairing ATM machines, the customer service aspect of the job appears to have consisted of Dewalt identifying himself to bank employees.  Dewalt Dep. 117-118.  In response to a question of whether he did anything to show Siemens that he was a good customer relations person, Dewalt responded "no."  Dewalt Dep. 44.  Munson, however, discussed his customer service experience during his interview.  He stated he had customer service

---

[5]Strother specifically testified that she hired Munson because he had great technical skills, excellent customer skills, very good organizational skills, he could be a good fit for the team and motivate some of the technicians that needed motivation, and he was recommended by Pond who knew the type of people needed for the job.  Strother Dep. 106-107.

responsibility at a prior job at Home Depot and in his Army experience.  Munson Dep. 33, 72.  He also presented two letters of recommendation which addressed customer service skills.  Defendant's Exs. 3 (Pond Recommendation) and 5 (Munday Recommendation).

Dewalt's resume did not directly indicate that he had any administrative or organizational experience.  Dewalt Dep. 30-31.  Dewalt stated that there was not a lot of paperwork required at his job at Efmark, his job in the Calibration Lab, and that only ten percent of the Ground Communications Technician Position involved paperwork.  Dewalt Dep. 66, 76, 199.  The FST job description specifically listed the requirements of maintaining field service logs and filing systems; documenting inspections, failures, repairs, and maintenance; and preparing reports for customers.  Defendant's Ex. 1.  Strother stated that major paperwork was involved in the FST position because Siemens was dealing with the government.  Strother Dep. 34.  Munson provided Siemens with a copy of his Army Commendation which discussed his administrative skills and accomplishments.  Defendant's Ex. 2.

Dewalt's resume did not indicate that he had any leadership roles other than training his successors.  In response to a question as to whether he provided Siemens with any examples of how he was a quality oriented team player, Dewalt responded "no."  Dewalt Dep. 43. Munson's Army Commendation recognized him for having motivated his squad and excelling as a leader.  See Defendant's Ex. 2, Strother Dep. 92.

Plaintiff argues that Siemens deviated from the job requirements by basing the selection on Munson's superior personality.  What is described by Strother as personality (people skills, listening skills, and communication skills), however, relates to the customer service requirements of the job.  The FST job description required that individuals have strong customer focus and teamwork and

listed customer service functions as a primary responsibility of the job.  See Defendant's Ex. 1.  Janet

Smith, former human resources director for Siemens, states that the majority of the job is not working

with equipment, but dealing with airport personnel and involves a lot of customer service.  Janet

Smith Dep. 29-30.  Plaintiff appears to argue that Siemens should have emphasized technical skills

in the selection process rather than customer service, administrative, team, and leadership skills.

"Employers, not employees or courts, are entitled to define the core qualifications for a position, so

long as the criteria utilized by the company are of a nondiscriminatory nature."  Cerutti v. BASF

Corp., 349 F.3d 1055, 1064 (7th Cir. 2003)(employer's evaluation of employees for purposes of a

RIF, based on prospective qualities as opposed to past performance, was permissible as long as not

based on prohibited criteria).  The qualifications for a position are a business decision with which

the courts should not interfere.  Id. at 1065; see also Wright v. N.C. Dep't of Health & Human Servs.,

405 F. Supp. 2d 631, 637 (E.D.N.C. 2005)(it is not up to the court to determine what an employer

ought to require as the minimal qualifications for a job).

(2)     Treatment in the Interview Process

Plaintiff argues that Dewalt and Munson were treated differently (shorter

interview for Dewalt and no meeting with the FSTs) during the interview process, which is indicative

of unlawful discrimination.  Siemens contends that Munson was treated the same as the third

interviewee King (who was substantially younger than Munson) during the interview and that

Munson has not established that any claimed difference in the interview process was due to age.

Specifically, Plaintiff claims that Dewalt was treated differently because Dewalt stated that his interview only lasted ten to fifteen minutes,[6] but Strother interviewed Munson for almost an hour, introduced and allowed him to interact with other FSTs, and paid for Munson to have lunch with them.[7]   Plaintiff also claims that Strother did not ask Dewalt any questions about his work experience, teamwork skills, people skills, or organizational skills (Dewalt Dep. 162-164, 167-168, 183-184), but Strother asked Munson about his electronic experience, background, customers skills, and ability to handle upset customers.

Although treating applicants differently during the application process can be indicative of unlawful discrimination, see Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d at 647 ("evidence of the unequal way in which [the employer] conducted the promotion process could have persuaded the jury that [the employer] did not give [the employee] fair consideration but rather discriminated against her") and King v. Trans World Airlines, Inc., 738 F.2d 255, 257 (8th Cir. 1984)(reversing district court's finding of no discrimination where employer failed to explain why applicant was treated differently than other applicants during interview process), Plaintiff fails to establish pretext based on differences in the interview process.

---

[6]Strother testified that she interviewed Dewalt for twenty to twenty-five minutes.  Strother Dep. 55.

[7]Plaintiff also argues that Strother's explanation of why only Munson (and not Dewalt of King) met with the FSTs is not credible.  Strother stated that the technician she normally has with her was working on an issue and that she did not know that Munson was going to meet with the other FSTs that day, but they just happened to be free from their work while Munson was there.  See Strother Dep. 101-102.  Plaintiff argues that Munson testified that he was told prior to his interview that he would be meeting with the FSTs.  Review of his testimony, however, reveals that he stated that he was not certain when he learned that he was going to meet the FSTs.  See Munson Dep. 64.

Although Dewalt's interview was shorter in time than Munson's interview, there is no indication that Strother did not consider Dewalt's qualifications or allow him to provide the information necessary to make a decision. Plaintiff argues that Strother did not ask Dewalt about his technical skills, but there is no dispute that Siemens found Dewalt qualified in the technical area. Dewalt also concedes that his interview went poorly and he was initially nervous. Dewalt Dep. 158-159. When asked by Strother if he had any questions, Dewalt only asked when Siemens would make its decision. Id. at 157.

The present action is distinguishable from the cases cited by Plaintiff. The jury in Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d at 647, found that the plaintiff (Joyce Dennis) had been discriminatorily denied a promotion based on her race. In Dennis, both the plaintiff and the candidate selected (Johnny Bridge) for the position of hospital registration supervisor failed to meet all of the qualifications of the job. In this action, however, it is not in dispute that Munson met the listed qualifications. Additionally, in Dennis, the decisionmaker offered inconsistent justifications for his decision.[8] The Dennis decisionmaker also sought out Bridge's candidacy (there was no indication that Bridge ever formally applied for the job) and intensively interviewed him, but only looked at Dennis' original application (from the time she was hired at the hospital as a registration clerk over a year before) and dismissed her application for a lack of management experience without knowing the full extent of her experience. Finally, Dennis presented evidence tending to suggest that the

---

[8]At deposition, the decisionmaker claimed that it was Bridge's managerial experience that made him a superior candidate. At trial, the decisionmaker asserted that it was both managerial experience and computer knowledge that set Bridge apart. Dennis also presented sufficient evidence for the jury to have concluded that Bridge's management and computer skills were overplayed by the decisionmaker as Bridge's only verified management experience consisted of managing a small Family Dollar store for eleven months and he received an "F" in the only computer course he ever took.

15

other female applicant may have been denied fair consideration despite the fact that she was the only candidate possessing all of the written job qualifications.  Dennis, 290 F.3d at 646-647.

This case is distinguishable from King, where the plaintiff alleged discrimination based on sex in violation of Title VII.  King had been a probationary kitchen helper who was terminated in a reduction in force and was classified as eligible for rehire at TWA.  The manager of the dining and commissary department interviewed King.  During the interview, the manager asked King questions about her pregnancy during her probationary employment, her marital status, the nature of her relationship with another TWA employee, the number of children she had and whether they were illegitimate, her child care arrangements, and her future childbearing plans.  It appears that this was the extent of the interview.  A second interview was held with two of King's prior supervisors, but the interview was very brief because neither supervisor remembered King.  It was undisputed that job applicants were not asked questions about pregnancy, child bearing, or child care during their interviews as a matter of company policy.  The Court in King found that the plaintiff's prima facie case raised the inference that the difference in treatment at the interview stage was at least in part the product of unlawful discrimination.  None of the reasons articulated by TWA explained why the plaintiff's interview was different from those of other applicants. In this action, there is no evidence that Siemens asked prohibited questions.  Additionally, Dewalt appears to have been treated similarly to the third applicant, King, who (although was apparently over 40 years old) was also significantly younger than Dewalt.

(3)    Subjective Evaluation/Personality

Plaintiff alleges that Strother's reliance on her own subjective assessment of intangible aspects of the applicants' personalities is probative of pretext.  Additionally, Plaintiff

claims that Strother did not articulate any clear or reasonably specific basis for her evaluations. Siemens contends that it is entitled to rely on the criteria it has chosen, even subjective criteria, in selecting a FST. Additionally, Siemens argues that its decision was not based solely on personality and that not all of the criteria Siemens used to select the FST were subjective.

Plaintiff fails to show that Strother's reliance on subjective criteria is pretext for discrimination. Contrary to Plaintiff's argument, Strother did not rely solely on subjective criteria, but determined that Munson was a better candidate in the areas of customer service, administrative, team, and leadership skills. Strother based her assessment of Munson having good organizational skills on the recommendations, information that Munson that he had handled millions of dollars of inventory, and his Army commendation. She noted that Munson showed good leadership qualities based on the commendation that he motivated his squad. Strother Dep. 92.

Plaintiff claims that it has shown pretext because Strother previously hired four FSTs, all of whom were significantly younger (12 to 31 years younger) than Dewalt. This argument fails. Even if a plaintiff can show that the employer hired no employees over age forty in a given time period, which Plaintiff has not done in this case, he has not established the demography of the available hiring pool such that this evidence has little probative value. See Greenberg v. Union Camp Corp., 48 F.3d 22 (1st Cir. 1995).

Plaintiff also claims that pretext has been shown because Strother testified that she thought Munson would be a "good fit" to work with the other FSTs. The other FSTs that the person hired would work with were Terrance Wright (32 years old), Kevin Jones (29 years old), Jeffrey Powley (45 years old), and Sam Galbato (35 years old). The FST would also work with Charles Beeson (38 years old) and Oliver Blab (34 years old). Strother Dep. 85-86; Plaintiff's Ex. 4 (Siemens'

17

Supplemental Response to Plaintiff's First Set of Interrogatories).  This argument fails.  Although Strother testified that she thought Munson would be a good fit, she explained that "some of the people in the area may have been a little lazy.  So it's important to try to get someone that can motivate and inspire people too.  So I was looking for someone to kind of take a leadership role in the area eventually."  Strother Dep. 88-89.[9]  There is no indication that her description of "fit" was based on age.

### <u>CONCLUSION</u>

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 40) be **granted**.  It is also recommended that Defendant's motion for an extension of time to depose Plaintiff's proposed rebuttal expert (Doc. 34), Defendant's motion to strike Plaintiff's proposed expert rebuttal witness (Doc. 37), and Plaintiff's motion to strike Defendant's identification of expert witnesses (Doc. 38) be **denied** as moot.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

December 1, 2008
Columbia, South Carolina

---

[9]Siemens also argues that its motion for summary judgment should be granted because Dewalt failed to mitigate his damages.  As Plaintiff has not shown that Siemens discriminated against Dewalt based on his age, it is not necessary to address the issue of mitigation.

18