UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Equal Employment Opportunity Commission | ) | C/A No.: 3:07-1769-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Siemens Maintenance Services, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court for review of the magistrate judge's report and recommendation made in accordance with 28 U.S.C. § 636(b)(1)(A) and (B) (West 2006) and Local Rule 73.02(B)(2)(g) (D.S.C.). As the jurisprudence in this district outlines:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

This is an action initiated by the Equal Employment Opportunity Commission ("EEOC") pursuant to the Age Discrimination in Employment Act ("ADEA"); codified at 29 U.S.C.A. §§ 621 to - 634 (West 2008). The EEOC alleges that defendant Siemens Government Services ("Siemens"),

identified in the complaint as Siemens Maintenance Services, decided against hiring Kenneth Dewalt based on his age.  EEOC argues that in doing so, Siemens violated the ADEA.

Four motions are currently pending in the case.  Siemens has filed a motion to extend the time for deposing a rebuttal expert designated by the EEOC [dkt. # 34]; a motion to strike the EEOC's designation of the rebuttal expert [dkt. # 37]; and a motion for summary judgment [dkt. # 40].  The EEOC has filed a motion to strike Siemens' designation of an expert [dkt. # 38].  This matter was designated to the magistrate pursuant to the Local Rules of this court, and the magistrate issued a report and recommendation [dkt. # 48] finding that Siemens' motion for summary judgment should be granted and the remainder of the motions should be dismissed as moot.  The EEOC filed objections [dkt. # 49], but for the reasons that follow, the court overrules the EEOC's objections and adopts the magistrates report and recommendation.

I.    Factual/Procedural Background

One of the areas in which Siemens operates its business is the area of airport security systems.  In 2003, Siemens began work for the Transportation Security Administration ("TSA") which involved maintaining and repairing airport security equipment across the country.

In 2005, Kenneth Dewalt applied with Siemens for a position as a field services technician located in Columbia, South Carolina.  Dewalt's application was screened by an outside company, Attwater Corporation, who Siemens engaged to review applications submitted over the internet. Siemens ultimately interviewed three people for the position; Dewalt, Danny King (also screened by Attwater), and Andrew Munson.  Munson was not screened by Attwater because he had been referred to Siemens by a current Siemens employee.  At the time of the interviews, Dewalt was 57

years old, Munson was 30, and King was in his mid-forties.[1]  Siemens hired Munson for the position,

and Dewalt filed a charge of age discrimination against Siemens shortly thereafter.

Much of this dispute centers around the qualifications of the applicants, the requirements of

the field services technician position, and the circumstances of the interviews.    Siemens'

advertisement for the position indicates that a field services technician would be specifically required

to conduct "corrective and preventative maintenance of explosive detection equipment and passenger

screening equipment," and "[m]aintain field service logs and filing systems."  See [dkt. # 40-2].  The

advertisement noted that equipment tests and repairs would be part of the primary responsibilities

of the position, as would reviewing logs, preparing formal reports to customers, providing customers

with equipment and service tools, promptly responding to service calls, providing quality service

through interaction with customers and feedback, and training customers to maintain and adjust

equipment.  *Id*.  The listed requirements were an associates degree or equivalent training, preferably

an electrical/electronic engineering degree, computer literacy, and a minimum of two years

experience in troubleshooting and repairing electric and electronic equipment.  Medical CT, MRI,

and X-ray experience was listed as a plus.  *Id*.

Both Dewalt and Munson were qualified for the position.  Dewalt had more extensive

experience in the field; he had worked in the airline industry for a substantial period of time (over

20 years), and had fairly recently worked on troubleshooting and repairing airport security

equipment. Munson had experience repairing electronic equipment while in the United States Army.

In his position there, Munson repaired equipment on Apache Helicopters and maintained the testing

---

[1]The Magistrate approximated King's age based on the date of King's high school
graduation, which appears to have been the only evidence of King's age in the record.  Neither
party makes an objection as to this approximation.

equipment used to make those repairs.  Munson additionally had completed some college and

technical school course work in electronics and computer applications, continued after leaving the

Army in electronics testing for some time, and brought to his interview two favorable references and

a Commendation from the Army.  The Commendation noted Munson's technical expertise and

exemplary performance, as well and Munson's responsibility for maintaining and testing a great deal

of equipment and training other members of the military.  See [dkt. # 40-3].

Munson's and Dewalt's interviews with Siemens went very differently.  Dewalt thought his

went poorly, and was disappointed that the representative from Siemens interviewing him was not,

in his view, very interested in talking with him about his qualifications.  Dewalt testified that he

thought, as he left the interview, he would not get the job.  The tone of Munson's interview appears

to have been much more energetic.  The evidence suggests that the interview lasted close to an hour

(Dewalt's appears to have been in the 10-25 minute range), and Munson thereafter accompanied the

interviewer to lunch, on Siemens' dime, where he met and it seems informally interviewed with

some of Siemens' current field services technicians.  Siemens did not interview the third candidate

for the position, King, until after Munson's interview, and although there is no evidence as to the

tone or tenor of King's interview, there is no evidence that King met other field service technicians

or had an interview which was different in organization from Dewalt's.

For the purposes of summary judgment, Siemens stipulated that the EEOC had established

a prima facie case of age discrimination in that Dewalt was a member of a protected class (he was

at least 40 years old); he applied for and was qualified for the field services technician position; he

was not selected for the position; and the position was filled by a substantially younger individual.

Siemens offered that Dewalt was rejected and Munson was preferred because Munson was a "known

quantity" (he was referred by a current Siemens employee who had worked with him in the Army); had a more engaging or "superior" personality; had better communication skills; and had better leadership skills. The EEOC then argued that other evidence existed suggesting that these nondiscriminatory reasons were pretext for age discrimination because Dewalt's qualifications are superior to Munson's; circumstantial evidence regarding differences in the interview process indicated that Dewalt and Munson were treated differently; and Siemens relied on subjective criteria in making its decision. The magistrate rejected the EEOC's arguments and recommended that Siemens be granted summary judgment.

The EEOC thereafter filed objections, contending that the magistrate impermissibly made credibility determinations, weighed evidence, and drew inferences from the facts in crafting a report and recommendation on Siemens' motion. The EEOC specifically objects that a reasonable jury could determine that Siemens discriminated against Dewalt based on his age given (1) Dewalt's qualifications; (2) the differences between Dewalt's and Munson's interviews; and (3) Siemens' reliance on subjective criteria.

II.    Law/Analysis

There are shifting burdens of production and of proof in discrimination cases. If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). At all times, the plaintiff bears the burden of establishing, often through the use of circumstantial evidence, that the defendant intentionally discriminated against the plaintiff. *R*eeves, 530 U.S. at 143. Once a defendant has

5

produced a nondiscriminatory explanation for its decision, the presumption of discrimination which follows a prima facie case "drops out of the picture." *Id*.

The defendant's production of a nondiscriminatory reason for its decision, however, does not entitle him to judgment as a matter of law. One way for a plaintiff to continue towards proving intentional discrimination is to show that his or her qualifications are "so plainly superior that the [defendant] could not have preferred another candidate." *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002). Another is to offer evidence that the defendant's proffered nondiscriminatory explanation is false. This is because it is sometimes the case that a trier of fact can "reasonably infer" that a defendant is covering up a discriminatory purpose with false explanations. *Reeves*, 530 U.S. at 147. A plaintiff offering this type of evidence is therefore attempting to show that the defendant's offered nondiscriminatory justification is merely pretext for a decision motivated by discrimination and is therefore "unworthy of credence." *Id*., at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In addition to these standards, lower courts have been given a great deal of guidance with respect to how to judge summary judgment motions in discrimination cases. A party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis*, 290 F.3d at 645. The court cannot make credibility determinations or weigh the evidence, but the the court can and should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves*, 530 U.S. at 150. To the casual observer, there may be some tension in these standards. This is because on the one hand, the court is asked to examine the prospective actions of a reasonable jury, and on the other hand, the court is instructed not to weigh evidence. This court, however, does not read too much into this position.

The difference is between weighing the evidence between parties, and determining whether a party's offered evidence is legally sufficient to support a finding of discrimination. The difference is also between comparing the strength of the parties' arguments, and looking at the strength of a party's case on its own terms. In both examples, the latter examination is clearly permissible. Otherwise there would be nothing to judging summary judgment.

This distinction finds support in precedent. In *Reeves*, the court was instructed that:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

530 U.S. at 148. The Fourth Circuit has informed that this passage from *Reeves* "instructs more broadly that factors on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.'" *Dennis*, 290 F.3d at 649 (citing *Reeves*, 530 U.S. at 148-49)).

The question the court asks in resolving the EEOC's objections is whether the magistrate strayed beyond the limits for permissibly resolving summary judgment, and the court determines that the magistrate did not.

The EEOC presented a prima facie case of discrimination, but the EEOC's evidence offered to rebut Siemens' nondiscriminatory justifications for its decision is, on its own terms, extremely

weak.  The job description Siemens provided for the field service technician position announced that

the position required competence in an array of fields - technical, service, communication, problem-

solving, and administrative - and the Siemens interviewer made notes from Dewalt's and Munson's

interviews with respect to some or all these areas.  There is nothing in the interviewer's notes

suggesting any discriminatory motive for Siemens' decision not to hire Dewalt and to hire Munson.

Furthermore, when asked about her reasons for hiring Munson, the Siemens interviewer's

justifications were consistent with her notes - her notes reflect that she thought Munson had a "great

personality;" was "team oriented;" "wanted a career with Siemens;" came highly recommended; and

was the "total package."  See [dkt. # 40-5].  Dewalt's interview notes reflect that the interviewer was

confident in his technical abilities and thought Dewalt a "good candidate," but reveal nothing

remarkable, on the positive or negative side, regarding the interviewer's impression of Dewalt.  See

[dkt. # 40-7].  Given the nature of the position Siemens was looking to fill and the duties it entailed,

there is simply not a large pile of evidence suggesting that the interviewer should have deemed

Dewalt's qualifications as superior to Munson's.  It also bears noting that Dewalt may have

qualifications in areas that go beyond those reflected in his resume and in the interview notes, but

it is the perception of the decision-maker that counts, not the employee's self-perception.  See

*DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

The EEOC's noting of the differences between interviews is similarly not of the sort typically

given weight in discrimination cases.  The interviewer here did not mention Dewalt's age in the

interview, much less focus upon it.  See *Reeves*, 530 U.S. at 151 (age discrimination case where

employer had mentioned employee "was so old [he] must have come over on the Mayflower" and

"was too damn old to do [his] job.").  Indeed there is no substantive evidence the interviewer

considered Dewalt's age at all.  Instead, Dewalt's interview, for whatever reason, was less exciting

that Munson's, and Munson's apparently went so well that the interviewer invited him to attend a

lunch with existing field service technicians following the interview.  This is all the evidence there

is, and if offered to show discrimination, it does not show much.

Most of the EEOC's "subjective criteria" criteria argument is subsumed by the already-

performed comparison between Siemens' job posting and the interviewer's notes.  Siemens

advertised the job as demanding some skills that are hard to measure, and the interviews therefore

involved the evaluation of subjective criteria like "communication skills" and "demeanor," but one

point bears further mentioning.  The EEOC takes issue with the interview's characterizing Munson

as a "better fit" with the then current crop of field service technicians, and the EEOC argues that

"better fit" is a proxy for age given the ages of the current employees, which were then 32, 29, 45,

35, 38, and 34.  The EEOC thus argues that a reasonable jury could conclude that the interviewer had

a predisposition favoring younger employees.

The court disagrees and finds that this case falls into that class of cases described in *Reeve* -

those cases where a plaintiff has created only a weak issue of fact as to whether the employer's

reason was untrue and there is abundant and uncontroverted independent evidence that no

discrimination occurred.  The uncontradicted evidence is that the interviewer gave Dewalt a positive

review, but noted several nondiscriminatory reasons for giving Munson a better one.  The

nondiscriminatory reasons are all supported by direct evidence, and the interviewer has unwaveringly

adhered to those reasons.  This case is simply different from the cases relied upon by the EEOC.  The

chosen candidate did not fail to meet the job's requirements while the other exceeded them, and there

are no inconsistencies in the interviewer's offered justifications for her decision.  There is no

evidence that the subjective attributes Siemens used in making its decision are not relevant to the job and were not mentioned on the advertisement. There is no evidence that the interviewer ignored parts of one candidate's qualifications and over-emphasized others; treated similar aspects of two candidates differently; asked inappropriate and irrelevant questions; made inappropriate comments; and it is not a case where the nondiscriminatory justifications offered for Siemens' decision do not explain the different treatment in the interviews. In can be expected that a party perceived as outgoing and possessing an energetic personality might have a longer and more engaging interview than a candidate that is more reserved or introverted. This list compiles circumstances that have sometimes marked situations in which a reasonable jury could conclude that an employer's benign justifications can operate as cover for discrimination. See *Reeves*, 530 U.S. at 151; *King v. Trans World Airlines, Inc.*, 738 F.2d 255 (8th Cir. 1984); and *Ham v. Washington Suburban Sanitary Comm'n*, 158 Fed.Appx. 457 (4th Cir. 2005). But here, there is simply very little evidence rebutting Siemens' offered nondiscriminatory reasons. In the face of the uncontradicted evidence, the court finds that no reasonable jury could return a verdict in favor of the EEOC.

III.     Conclusion

For the foregoing reasons, the report and recommendation of the magistrate is incorporated herein by reference and adopted as the order of this court. The plaintiff's objections are overruled, and the defendant's claim for summary judgment is granted. The remaining pending motions are therefore moot.

IT IS SO ORDERED.

February 10, 2009                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                                 United States District Judge